### UNITED STATES v. MORSMAN.

*(District Court, E. D. Missouri, E. D. May 21, 1890.)*

1. INTERSTATE COMMERCE—EXPRESS COMPANIES.
    Express companies, independently organized as corporations for the transaction of the express business on their own account, are not subject to the provisions of the interstate commerce act.
2. SAME—INDICTMENT.
    An indictment which charges that an express company is "a corporation and common carrier engaged in the transportation of property by railroad from one state to other states," but which does not show that such company is a mere adjunct or bureau of a railroad company or combination of railroad companies, does not bring such express company within the purview of said act.

At Law. On demurrer to indictment.

Indictment of Herman A. Morsman for alleged violation of the interstate commerce act as the agent of the Pacific Express Company.

*George D. Reynolds*, Dist. Atty., for plaintiff.

*A. C. Davis* and *W. W. Morsman*, for defendant.

THAYER, J. In the *Case of the Express Companies*, 1 Int. St. Com. R. 349, the commission decided, after a very full and careful review of the provisions of the interstate commerce law, that express companies, independently organized as corporations or joint-stock companies for the transaction of the express business on their own account, are not subject to the provisions of the interstate commerce law, but that when a railroad company, by itself or in combination with other railway companies, engages in the express business, and transacts such business by means of its ordinary transportation staff, it must conform to the provisions of the interstate commerce law in the management of that special department of its business, as well as in the management of its ordinary freight traffic. The reasons assigned for such decision by the commission, if not entirely conclusive, are at least satisfactory; and it is quite probable that since the decision in question all independent organizations engaged in the express business have acted on the assumption that their business is not subject to the provisions of the act. This is a sufficient reason for following the decision, unless it is clearly erroneous.

Many provisions of the act, as pointed out by the commission, clearly indicate that, in framing the act, congress only had in view those common carriers, ordinarily termed "railway companies," that are engaged in the transportation business over lines of railroad by them owned or operated. At the time the act was passed, the express business of the

country had grown to large proportions, was a business of a distinctive character, was carried on by numerous corporations and joint-stock companies under various arrangements with railway companies, and had been recognized as a distinct business in previous congressional enactments. Nevertheless, express companies are not mentioned in any of the provisions of the interstate commerce act. It is highly improbable that congress would have failed to mention this very important class of carriers in some manner, if it had been its intention to subject them to the provisions of the act. It is also a matter of such notoriety that the courts may properly take notice of the fact, that the grievances of which the public complained before the interstate commerce law was passed were charged almost exclusively to the account of the railway companies of the country; and congress may fairly be presumed, for that reason, to have had that class of carriers in mind, rather than express companies, when the law was enacted. At the time the act was passed, the method of doing business and fixing rates in vogue among the latter class of carriers had occasioned very little, if any, public criticism. It is also apparent that express companies are not strictly within the provisions of the first section of the act, defining who shall be subject to its provisions, because they are not engaged in the transportation of freight "wholly by railroad." A very large part of the capital of express companies is invested in teams, and vehicles for transportation other than railway cars, and a very considerable part of the transportation service performed by such carriers, for which they presumptively demand and receive compensation, is done otherwise than by railroad. They make a practice of collecting and delivering property by teams in all cities and villages of any considerable size, which railroad companies, in this country at least, do not do, unless they are themselves engaged in the express business. Without going more into detail, inasmuch as the subject has been fully canvassed by the commission, it will suffice to say that I concur in the view that the interstate commerce law only applies to common carriers engaged in operating lines of railway, or railway and water lines combined, and that it does not apply to "express companies," properly so termed; that is to say, to independent organizations that carry on the express or parcel business in the usual manner, and which do not operate railway lines. The sufficiency of the indictment, therefore, must be tested in accordance with that construction of the law.

It will not be denied, I apprehend, that if the express business of the country is not subject to the provisions of the act except when it is carried on in a particular manner,—that is to say, by a railway company, or a combination of railway companies, as a branch or department of their general freight traffic,—then an indictment like the one at bar, against a person alleged to be an agent of an express company, for violations of the interstate commerce law in transacting the companies' business, ought to contain proper averments showing that the particular business with respect to which complaint is made, is subject to the provisions of the law; otherwise an offense is not charged with that degree of certainty requisite in a criminal proceeding. In the indictment now un-

der consideration the defendant is brought within the purview of the act, if at all, by an averment "that the Pacific Express Company, at the date of the commission of the various acts complained of, was a corporation and a common carrier engaged in the transportation of property by railroad from one state of the United States to other states of the United States, especially from the city of St. Louis, in the state of Missouri, to Litchfield, in the state of Illinois, and that the defendant was the general agent of the Pacific Express Company at said city of St. Louis." But this averment shows that the words "Pacific Express Company" are not merely a name under which a railway company, or a combination of railway companies, transact a certain part of their business. The averment is that the company is a corporation, and that implies that it is a distinct legal entity, having stockholders, a board of directors, or trustees, and other officers; in short, that it is an independent organization, engaged in business on its own account. The name of the corporation, as well as other averments of the indictment, also imply that the company in question is doing an express or parcel business, according to the usual method in vogue of carrying on that business, and that the defendant, its agent, was engaged in that line of traffic, for and in behalf of his principal, as distinguished from an ordinary railway freight traffic business, at the time of committing the supposed offenses described in the indictment. There is nothing in the bill that has the slightest tendency to establish that the Pacific Express Company is a mere adjunct or bureau of a railway company or combination of railway companies. All of the averments tend to show that it is an independent concern, engaged in the express business for its own profit, and for that reason is not subject to the provisions of the interstate commerce act as construed by the commision.

It was contended on the hearing of the demurrer that the case was brought within the act, so far as is necessary by averment in an indictment, merely by the allegation that the Pacific Express Company is "a common carrier" engaged in interstate "transportation of property by railroad," because that is, in substance, the description of carriers declared by the act to be subject to its provisions. It will observed, however, that the first section of the act describes those subject to its provisions as "common carriers engaged in the transportation of property wholly by railroad," etc., and in the present case it is not even averred that the Pacific Express Company was engaged in transporting property wholly by railroad. Therefore the language of the first section of the act, if that would suffice to bring the case within the statute, is not employed. But for other reasons I conclude that the contention is not tenable. It might be said of any express company, and the allegation could probably be supported by proof, that it is engaged in interstate transportation of property by railroad, and that it is also a common carrier; but this would not necessarily bring it within the act, because, from the provisions of the law considered as a whole, congress does not appear to have intended to subject "express companies," properly so termed, to the provisions of the law. When complaint is made by way of indict-

ment of a violation of the act, growing out of the manner in which an express business has been conducted, it is essential, conceding that such business may, under certain circumstances, when transacted by railway companies, be subject to the regulations of the act, to show by proper averment that the circumstances exist, bringing the particular case within the purview of the law. For the reasons indicated, that is to say, because the indictment does not show that the Pacific Express Company is subject to the interstate commerce act, the demurrer is sustained.