SOUTHERN INDIANA EXP. CO. v. UNITED STATES EXP. CO. et al.

(Circuit Court, D. Indiana.   August 4, 1898.)

No. 9,608.

1. CARRIERS OF GOODS—DUTIES OF CONNECTING LINES INTER SE.

The rules of the common law do not require a carrier to receive goods for carriage, either from a consignor or a connecting carrier, without prepayment of its charges if demanded, nor to advance the charges of a connecting carrier from which it receives goods in the course of transportation; nor can it be required to extend such credit or make such advances to one connecting carrier because it does so to another.

**2. SAME—EXPRESS COMPANIES—INTERSTATE COMMERCE ACT.**
    The interstate commerce act does not apply to independent express companies not operating railway lines.

**3. MONOPOLIES—ANTI-TRUST LAW—REMEDIES.**
    The anti-trust law, of July 2, 1890, does not authorize a court of equity to entertain a bill by a private party to enforce its provisions, his remedy being by an action at law for damages.

**4. CARRIERS—EXPRESS COMPANIES—INDIANA STATUTE.**
    The statute of Indiana prescribing the duties of railroads with reference to intersecting lines (2 Burns' Rev. St. 1894, § 5153; Rev. St. 1881, § 3903) has no application to express companies.

**5. SAME—CUSTOM—SUFFICIENCY OF ALLEGATION.**
    In a bill against three express companies, an allegation of a custom between defendants to receive goods from each other for transportation without prepayment of charges, and to advance back charges to each other, is not an allegation of a general custom of the business, which would bind defendants to pursue the same method with other companies.

This was a bill by the Southern Indiana Express Company against the United States Express Company and others. Heard on demurrer to bill.

Joseph H. Shea and Francis M. Trissall, for complainant.
Baker & Daniels, for defendants.

BAKER, District Judge.    This bill is filed by the Southern Indiana Express Company, a corporation organized and existing under the laws of the state of Indiana, against the United States Express Company, the American Express Company, the Adams Express Company, and certain individual defendants, alleged to be officers and stockholders in said companies.    The express companies are alleged to be joint-stock associations organized under the law of the state of New York, which is as follows:

"Any joint-stock company or association consisting of seven or more shareholders or persons may sue and be sued in the name of the president or treasurer for the time being of such joint-stock company or association; and all suits and proceedings so prosecuted by or against such joint-stock company or association, and the service of all process or papers in such suits and proceedings on the president or treasurer, for the time being, of such joint-stock company or association, shall have the same force and effect as regards the joint rights, property and effects of such joint-stock company or association, as if such suits and proceedings were prosecuted in the names of all the shareholders and associates in the manner now provided by law."

The bill alleges that the defendant companies have been for many years engaged in the express business, and in carrying articles of trade and commerce over railroads under contracts with them, and have been declared by the law of this and other states to be common carriers, subject to all the liabilities, and bound to perform all the duties, of such common carriers; that the complainant entered into a contract with the Southern Indiana Railway Company, a railway located wholly within this state, to carry on an express business over said railway for five years from and after June 30, 1898; that the defendant companies carry on an express business over railroads which connect with the Southern Indiana Railway, and that the express business originating on the line of railway over which the complainant carries on its business cannot be transported to its destination without pass-

ing over one or more of the lines of railway over which some one of the defendant companies carries on its business; that the usage, long established, over the Southern Indiana Railway by the defendants, as well as long, continuously, universally, and uninterruptedly established by them over the lines of railway on which they carry on their business, was to receive and deliver to each other packages for points beyond their own routes, so that a package for a distant point is transferred from one express company to another as often as required to reach its destination, and is taken by one continuous and unbroken carriage, and, to facilitate promptness and simplicity in transfers from one company to another, the receiving company pays to the tendering company all charges which have accrued for carriage to the point of tender, known as "accrued charges" or "advance charges," so that the company having advanced all the accrued charges receives from the consignee and retains the whole amount of charges to the point of destination; that another of such established customs and usages is to receive and forward packages from each others' lines to consignees at points of destination over the lines of the others without requiring the prepayment of charges from the consignor or the company to which the package is delivered to be forwarded; that another of the customs and usages established is the fixing and publication of tariff charges for carrying packages from and to all points, which tariffs are divided pro rata between each of the companies handling the package. The bill then proceeds to aver that these usages and methods of doing business were safe, reasonable, and essential to the quick and simple transfer of packages, and to the transaction of the express business, and that any company denied the facilities thus afforded would be unable to compete in the same business with another company which could avail itself of such usages, and could not do a general express business so as adequately to accommodate the public. The bill then proceeds to allege that the defendant companies refuse, when articles of trade and commerce carried by the complaint are tendered to the defendants, to pay the accrued charges, or to receive and transport to their destination any such articles without the prepayment of the charges for such transfers. The prayer of the bill is that the defendants may be enjoined and restrained from refusing to receive any and all parcels offered or delivered to them by complainant for transportation and delivery to consignees, and from demanding prepayment of their charges for such transportation, and from retaining and withholding from the complainant all sums of money known as accrued charges for express matter delivered to them by the complainant, and from refusing to or retaining from the complainant the reasonable pro rata part of the charges and compensation complainant may earn upon express business originating off its line.

The grounds upon which these claims for injunctive relief are predicated are: (1) That such is the duty of common carriers at common law; (2) that such is their duty under the interstate commerce act; (3) that such is the requirement of the anti-trust law; (4) that such duty is imposed upon them by the custom and usage set up in the bill.

The defendant companies have demurred to the bill and the amendment thereto, on the ground that the court is without jurisdiction,

and also because the bill and the amendment are without equity, on the facts stated.

Waiving, without deciding, the question of jurisdiction, the court is of opinion that the bill cannot be maintained on any one of the above-stated grounds.

1. There is no principle of the common law requiring a common carrier receiving articles of trade and commerce from a connecting line to advance or assume the payment of the charges accrued thereon for the transportation of such articles from the point of origin to the connecting line. If it does thus pay or assume such accrued charges, it can retain a lien upon the property transported for their payment as well as for the payment of the charges due to itself for such transportation. An express company, like any other common carrier, has a right to demand that its charges for transportation shall be paid in advance, and is under no obligation to receive goods for transportation unless such charges are paid if demanded. Nor is such express company under any obligation to pay to the tendering company the charges due to it for its services in transporting such articles of trade and commerce from the point of origin to the point of tender. It is true that the general practice is to collect the charges upon delivery of the goods to the consignee, and, when goods are received without payment in advance being demanded, it becomes the duty of the carrier to transport them to their destination, or to deliver them to the next receiving carrier. Receiving the goods for transportation without any demand for prepayment of charges constitutes a waiver of such right. The carrier holds a lien upon the goods for payment of charges, and, in case of a delivery of them to the consignee before payment, it can hold him responsible therefor. The same rule applies whether the articles of trade and commerce are received from the original consignor or from a connecting carrier. An express company, in the absence of contract, is under no obligation to receive and transport for the original consignor, or to continue the transportation for a connecting carrier, without the prepayment of its charges if demanded. The furnishing of equal facilities, without discrimination, does not require a common carrier to advance money to all other carriers on the same terms, nor to give credit for the carriage of articles of trade and commerce to all carriers because it extends credit for such services to others. Oregon Short-Line & U. N. Ry. Co. v. Northern Pac. R. Co., 9 C. C. A. 409, 61 Fed. 158; Id., 51 Fed. 465; Little Rock & M. R. Co. v. St. Louis S. W. Ry. Co., 11 C. C. A. 417, 63 Fed. 775; Little Rock & M. R. Co. v. St. Louis, I. M. & S. Ry. Co., 41 Fed. 559.

2. The interstate commerce act has, so far as express companies not operating railway lines are concerned, wrought no change of the common law in this regard. At an early day the question was raised whether express companies were subject to the provisions of the interstate commerce act, and, after full argument and deliberate consideration, the interstate commerce commission unanimously decided that the act did not apply to express companies properly so termed; that is to say, to independent organizations that carried on an express or parcel business in the usual manner, and which did not operate railway lines. In re Express Companies, 1 Interst. Commerce Com. R. 349.

This case was decided on December 28, 1887. The commission shortly thereafter called the attention of congress to their ruling, and suggested such an amendment of the law as would place express companies within their jurisdiction; but, although more than 10 years have elapsed, congress has taken no action on the subject. The same conclusion was reached in U. S. v. Morsman, 42 Fed. 448. After a careful consideration of the question, I see no reason to doubt the correctness of the conclusions reached in these cases. Under the averments of the bill, it is manifest that neither of the express companies is affected by the interstate commerce act.

3. The anti-trust law of July 2, 1890, has wrought no such change in the law as will enable the court to enforce its provisions in favor of a private party by a bill in equity. Under this act, the only remedy given to any other party than the government of the United States is an action at law for threefold damages, with costs and attorney's fees, and the only party entitled to maintain a bill in equity for injunctive relief for an alleged violation of its provisions is the United States by its district attorney, on the authorization of the attorney general. Gulf, C. & S. F. Ry. Co. v. Miami S. S. Co., 30 C. C. A. 142, 86 Fed. 407, and cases there cited.

Nor does section 5153, 2 Burns' Rev. St. 1894 (section 3903, Rev. St. 1881), aid the complainant's contention. The sixth paragraph of that section is as follows:

"Every such corporation shall possess the general powers and be subject to the liabilities and restrictions expressed in the special powers following: * * * To cross, intersect, join and unite its railroad with any other railroad before constructed at any other point on its route and upon the grounds of such other railway company, with the necessary turnouts, sidings, switches and other conveniences in furtherance of the objects of its connections; and every company whose railroad is or shall be hereafter intersected by any new railroad, shall unite with the owners of such new railroad in forming such intersection and connections and grant the facilities aforesaid."

This paragraph plainly is not applicable to express companies which, like these defendants, do not own, control, or operate a railroad line, but which simply contract for space on railroad trains for the transportation of articles of trade and commerce committed to their care. Besides, the connections and facilities referred to are manifestly the physical connections essential to constitute the two railroads connecting lines. Such is the view of the supreme court of this state. Lake Shore & M. S. Ry. Co. v. Cincinnati, W. & M. Ry. Co., 116 Ind. 578, 19 N. E. 440; Chicago, St. L. & P. R. Co. v. Cincinnati, W. & M. Ry. Co., 126 Ind. 513, 26 N. E. 204. The same view of a very similar provision of the constitution of Colorado was taken by the supreme court of the United States in Atchison, T. & S. F. Ry. Co. v. Denver & N. O. R. Co., 110 U. S. 667, 4 Sup. Ct. 185.

4. There is not shown by the averments of the bill and the amendment to be any such custom or usage as would justify the court in granting the relief prayed for. The right of the complainant to such relief depends upon its showing the existence of a custom or usage having the force of law in the express business of the country. It is not enough to allege and prove a custom or usage among one or more express companies to pay accrued charges by the receiving company,

or to transport without prepayment of charges to the point of destination. Before a custom or usage can acquire the force of law, it must appear that it is general and uniform in the business to be affected by it, and that such custom or usage has been peaceably acquiesced in without dispute for a long period of time. The custom or usage set out in the bill is not shown to be of this character. It is certainly beyond the power of the defendants, by any custom or usage established between themselves, to compel all other express companies in this country to submit to the customs and usages which they have adopted. Nor because the defendants consent to pay accrued charges between themselves, and to continue the carriage of articles of trade and commerce to their destination without prepayment, can they be required to do the same for all others. While the method of doing business alleged to exist between the three defendant express companies is certainly highly advantageous to the prompt and speedy transportation of parcels and packages, the law cannot compel them to continue this method of doing business, even between themselves, much less as between themselves and others with whom heretofore they have had no business relations. Whether such a duty can be imposed by legislative enactment we need not consider, for no such exercise of power has as yet been attempted.

In the opinion of the court, the demurrer must be sustained, and, as no amendment can make a better case, the bill and the amendment will be dismissed, at complainant's costs.