## UNITED STATES v. COLORADO & N. W. R. CO.

(Circuit Court of Appeals, Eighth Circuit.   November 25, 1907.)

### No. 2,569.

1. COMMERCE—INTERSTATE COMMERCE—SAFETY APPLIANCE ACTS—TRANSPORTATION OF ARTICLES IN INTERSTATE COMMERCE FOR INDEPENDENT EXPRESS COMPANY IS ENGAGING IN SUCH COMMERCE.

   The transportation by a common carrier by railroad of articles of interstate commerce for an independent express company is "engaging in interstate commerce by railroad" within the meaning of the safety appliance acts (Act March 2, 1893, c. 196, § 1, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]; Act April 1, 1896, c. 87, 29 Stat. 85; and Act March 2, 1903, c. 976, § 1, 32 Stat. 943 [U. S. Comp. St. Supp. 1907, p. 885]).

2. SAME—SAFETY APPLIANCE ACTS—INDEPENDENT INTRASTATE RAILROAD COMPANIES ARE SUBJECT TO.

   A common carrier which operates a railroad entirely within a single state, and transports thereon articles of commerce shipped in continuous passages from places without the state to stations on its road, or from stations on its road to points without the state, is subject to the provisions of the safety appliance acts (Act March 2, 1893, c. 196, § 1, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]; Act April 1, 1896, c. 87, 29 Stat. 85; Act March 2, 1903, c. 976, § 1, 32 Stat. 943 [U. S. Comp. St. Supp. 1907, p. 885]), although it carries the property free from a common control, management or arrangement with another carrier for continuous carriages or shipments of the articles.

   [Ed. Note.—Duties of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

   Philips, District Judge, dissenting.

(Syllabus by the Court.)

In Error to the District Court of the United States for the District of Colorado.

Luther M. Walter and Ralph Hartzell (Earl M. Cranston, on the brief), for plaintiff in error.

P. H. Holme (Dines, Whitted & Dines, on the brief), for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge.   The Colorado & Northwestern Railroad Company, a corporation, owned and operated a railroad about 10 miles in length from Boulder to Sunset, and two branches each about 18 miles in length, to Eldora and Ward, respectively.   This railroad had a narrow gauge and was entirely within the state of Colorado, but its track had a physical connection with the tracks of the narrow gauge

railroads of other companies so that cars could be hauled over narrow gauge railroads from points without the state of Colorado to Boulder, and thence over the railroad of the Northwestern Company. This railroad company was handling express matter over its railroad in accordance with the terms of a contract between its predecessor and Wells, Fargo & Company, an independent express company, whereby the railroad company provided upon each of its passenger, mail, and express trains space and facilities in suitable cars for the storing and handling of, and received and carried on its railroad, all freight, packages, and treasure which the express company tendered to it for transportation, and the express company paid the railroad company therefor 50 per cent. of the gross earnings received by the express company in its operation on the lines of the railroad company, and on through and interchanged business, upon an appraisement based on local merchandise rates. In accordance with this practice the Northwestern Company hauled on July 16, 1906, for the express company, from Boulder to Sunset on its railroad, with an engine that was not equipped with an automatic coupler, a box of liquor which had been received by the express company at St. Louis in the state of Missouri, consigned to Sunset in the state of Colorado, and which was carried by the express company upon its through bill of lading to and delivered at Sunset. The railroad company did not receive, issue a bill of lading for, handle or deliver the package, except as it received it in its car and carried it for the express company in conformity to the practice which has been described. The United States brought an action against the Northwestern Company for the penalty fixed by the safety appliance acts (Act March 2, 1893, c. 196, § 1, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]; Act April 1, 1896, c. 87, 29 Stat. 85; Act March 2, 1903, c. 976, § 1, 32 Stat. 943 [U. S. Comp. St. Supp. 1907, p. 885]) for its use in moving interstate traffic of an engine unequipped with an automatic coupler, and upon the facts which have been recited the court instructed the jury to return a verdict for the defendant. The United States insists that this ruling was erroneous, and counsel for the railroad company endeavor to sustain it on the grounds (1) that the express company was not a common carrier subject to the provisions of the interstate commerce act of February 4, 1887, c. 104, § 1, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154], and hence the railroad company which carried its packages was not engaged in interstate commerce by railroad within the meaning of the safety appliance acts, and (2) because the Northwestern Company was not subject to the interstate commerce act for the reason that it did not transport the express package, or any other articles of interstate commerce "under a common control, management or arrangement (with another carrier) for a continuous carriage or shipment" and hence was not "engaged in interstate commerce by railroad" within the meaning of the safety appliance acts. It was upon these theories that the case was tried and the verdict was directed below.

But although the express company was not one of the common carriers engaged in interstate commerce to which the original interstate commerce act applied (U. S. v. Morsman [D. C.] 42 Fed. 448; South-

ern Indiana Exp. Co. v. U. S. Exp. Co. [C. C.] 88 Fed. 659), the box of liquor it caused to be transported from Missouri to Colorado was an article of interstate commerce, its carriage was a transaction of that commerce, and the express company's participation in its transportation was engaging in interstate commerce. Crutcher v. Kentucky, 141 U. S. 47, 57, 58, 59, 11 Sup. Ct. 851, 35 L. Ed. 649; Osborne v. Florida, 164 U. S. 650, 655, 17 Sup. Ct. 214, 41 L. Ed. 586; Caldwell v. North Carolina, 187 U. S. 622, 629, 23 Sup. Ct. 229, 47 L. Ed. 336. Moreover, the interstate commerce act had been so amended that express companies were subject to its provisions before the transportation here in issue was conducted. Act June 29, 1906, c. 3591, §§ 1 and 11, 34 Stat. 584, 595 [U. S. Comp. St. Supp. 1907, pp. 892, 911]. The safety appliance acts declare that "it shall be unlawful for any common carrier engaged in interstate commerce by railroad" (27 Stat. 531, § 1) "to haul or permit to be hauled or used on its line any car" (or engines—Johnson v. Southern Pac. R. Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363—except four-wheeled cars and certain logging cars, section 6), "used in moving interstate traffic unequipped with couplers coupling automatically by impact" (section 2), and that every such carrier shall be liable to a penalty of $100 for each violation of the statute. The Northwestern Company transported the box of liquor upon its railroad from Boulder to Sunset for the express company, on its continuous passage from its origin in one state to its prescribed destination in another, and evidence was rejected upon the trial that it was a daily occurrence for this railroad to carry express matter in its cars which had been consigned from points without to places within the state of Colorado. That rejected evidence should have been received because it had a tendency to show that the railroad company was engaged in interstate commerce and if the testimony had fulfilled the promise of the question propounded to elicit it and had been uncontradicted, the fact would have been established that the company was thus engaged within the meaning of the safety appliance acts. The transportation by a common carrier by railroad of articles of interstate commerce for an independent express company is engaging in interstate commerce by railroad as effectually as their carriage by it for the vendors or consignors.

Probably the clause "under a common control, management or arrangement for a continuous carriage or shipment" in the first section of the interstate commerce act qualified carriers "partly by railroad and partly by water" only, although there is high authority to the contrary (U. S. v. Geddes, 65 C. C. A. 320, 131 Fed. 452; Interstate Commerce Commission v. Bellaire, Z. & C. Ry. Co. [C. C.] 77 Fed. 942; Ex parte Koehler [C. C.] 30 Fed. 867; U. S. v. Chicago, K. & S. R. Co. [C. C.] 81 Fed. 783) and it is certain that this clause is thus limited in its effect since the passage of the amendatory act of June 29, 1906 (34 Stat. 584, 595, c. 3591, §§ 1, 11 [U. S. Comp. St. Supp. 1907, pp. 892, 911]). Conceding, however, but not deciding or admitting, that this clause qualified and specified the common carriers wholly by railroad that were subject to the provisions of the interstate commerce act prior to the amendments of 1906, the clause is

not found in any of the safety appliance acts, those acts plainly declare that it is unlawful for any common carrier engaged in interstate commerce by railroad to use cars unequipped with automatic couplers to move interstate traffic, and notwithstanding the opinion of the Circuit Court of Appeals of the Sixth Circuit in U. S. v. Geddes, 65 C. C. A. 320, 131 Fed. 452, which has been thoughtfully considered with that profound respect and deference which is due to the views of the eminent judges who announced it, our minds have been forced to the conclusion that the exception of common carriers using cars upon railroads wholly within single states to move interstate traffic free from "a common control, management or arrangement" with another carrier for a continuous carriage or shipment, may not be lawfully imported by construction into the safety appliance acts. The reasons which have led us to this conclusion have been stated in the opinion in United States v. Colorado & Northwestern Railroad Company, 157 Fed. 321, which is filed herewith, and it is useless to repeat them here.

Our conclusion is that a common carrier which operates a railroad entirely within a single state and transports thereon articles of commerce shipped in continuous passages from places without the state to stations on its road, or from stations on its road to points without the state, is subject to the provisions of the safety appliance acts, although it carries the property free from a common control, management, or arrangement with another carrier for continuous carriages or shipments of the goods.

In the light of this conclusion error crept into the trial of the case in the court below because it followed the contrary view, and for this reason the judgment below must be reversed, and the case must be remanded to the District Court for a new trial, and it is so ordered.

PHILIPS, District Judge (dissenting). In the case of United States v. Colorado & Northwestern Railroad Company, No. 2,568 (157 Fed. 321), I have discussed the principal grounds of my dissent herein. There is a difference in the facts, however, in the two cases. In this case the package of whisky was delivered by the consignor in St. Louis, Mo., to the Wells, Fargo Company, an express carrier, to be carried by it and delivered to the consignee at Sunset, Colo., a station on the defendant's line of railroad. This package was not billed to or receipted for by any railroad company, but was billed to and receipted for by the express company, an independent common carrier. When it reached Boulder, Colo., the southern terminus of the defendant's line of road, it was not turned over to or receipted for by the defendant, but the express agent or messenger in whose charge it came from Denver to Boulder, over the Colorado & Southern Railroad Company, turned it over to the messenger of the express company, who carried it in the car on defendant's road set apart and used by the express company, to its destination. No contractual relation existed between the defendant and the railroad company bringing the package to Boulder. The defendant did not care for nor look after express matter. Its carriage from Boulder to Sunset depended alone upon

the arrangement between it and the express company. Prior to the passage of what is known as the "Hepburn Act" (Act June 29, 1906, c. 3591, § 1, 34 Stat. 584 [U. S. Comp. St. Supp. 1907, p. 892], express companies were not declared to be common carriers under the interstate commerce act, and so the courts had declared that such express company was not a common carrier within the contemplation of said act of 1887. United States v. Morsman (D. C.) 42 Fed. 448; Southern Indiana Express Co. v. United States Express Company, 88 Fed. 659, affirmed in 92 Fed. 1022, 35 C. C. A. 172.

As said act of June 29, 1906, on its face is amendatory of the interstate commerce act of 1887, it must be conceded that to constitute a railroad company a common carrier in respect of carrying express matter, it must be acting under a common arrangement or management for a continuous carriage or shipment with the express company. Recognizing this to be true, counsel for the government, over the objection of the defendant, was permitted to put in evidence a copy of what purported to be a contract between the express company and the Colorado & Northwestern Railway Company, of date March 3, 1904. This copy was certified to by the Interstate Commerce Commission as a copy of the contract filed with it. Upon what principle of law such certified copy from the Interstate Commerce Commission was admissible in evidence in a suit between the United States and the defendant to enforce a penalty under the safety appliance act of 1893, I am not advised. There is no statute making such certified copy of such paper in the possession of the Interstate Commerce Commission competent evidence in such controversy. All the local superintendent of the express company, when on the witness stand, stated was that he understood the goods carried on defendant's cars (which is a corporation created independently of the Colorado & Northwestern Railway Company, and which perhaps succeeded to the property rights of the older company) were hauled pursuant to a contract made between the express company and the Colorado railroad company. There was no proof that this contract had been accepted by any convention between the defendant company and the express company. But what the provisions of that contract were could only be proved by the introduction of the contract itself, or, under certain conditions, by the admission of secondary evidence as to its contents. But no foundation was laid for the admission of secondary evidence; and no authority was shown for the admission of a purported copy certified to by the Interstate Commerce Commission, where such contract was made prior to the adoption of the Hepburn act, declaring express companies to be common carriers.

It is no answer, it seems to me, to the admission of this evidence that as the defendant succeeded on the trial it is not in position to complain of it. At the conclusion of the plaintiff's evidence the court, on motion of the defendant, directed a verdict in its favor. No matter what reasons the court may have assigned for its action, if this evidence was improperly admitted by it, it should be held in favor of the correctness of the court's action that there was no competent evidence before it of the existence of any contractual relationship between

the express company and the railroad company of the character of an arrangement for a continuous carriage, within the meaning of the statute. The plaintiff in error ought not to be allowed to predicate a reversal upon evidence it erroneously elicited. In view of the legal attitude of the case I do not deem any discussion of the purport of that contract as pertinent.

In the examination of the witness Farnsworth, a brakeman on the defendant road, counsel for the government asked the following question:

"I will ask you whether it is a daily occurrence for the Colorado & Northwestern train to carry express matter which has been consigned from points without the state of Colorado, to points within the state of Colorado?"

It is ruled by the majority opinion that this question should have been answered, on the ground that it was competent to go to the jury to show that the defendant was engaged generally in carrying this class of interstate commerce. Unless this question, on objection thereto, had been supplemented by the statement of the prosecuting counsel that he proposed to show that such carriages had been made under a joint arrangement between the railroad company and the express company, for a through continuous carriage, an affirmative answer by the witness would not have tended to show that the defendant was engaged with the express company as a common carrier of interstate commerce, within the meaning of the interstate commerce act of 1887 and the Hepburn act of 1906. And as express companies were not regarded as such common carriers until after the adoption of the act of June 29, 1906, supra, the question should have disclosed the fact that the shipments inquired about occurred after the 29th day of June, 1906. There was, in my opinion, no error in rejecting the question asked.

As in the absence of any proof of a joint arrangement between the railroad company and the express company for such continuous carriage the plaintiff failed to make out a case, therefore the judgment of the Circuit Court should be affirmed.