## UNION STOCKYARDS CO. OF OMAHA v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. April 2, 1909.)

### No. 2,821.

COMMERCE (§ 27*)—CARRIERS—INTERSTATE COMMERCE—STOCKYARDS COMPANY CONDUCTING PART OF TRANSPORTATION BY RAILROAD FOR CARRIERS—SAFETY APPLIANCE LAW—"COMMON CARRIER ENGAGED IN INTERSTATE COMMERCE."

A stockyards company which owns and maintains at a large shipping point an extensive stockyards which is in effect the live stock depot of all the railroad companies doing business at that point, and which owns and maintains several miles of railroad tracks extending over its own premises from its stockyards to a transfer track (also on its own premises) connecting with the several tracks of the railroad companies, and which by means of its own locomotives and servants transports for hire over its tracks all shipments of live stock accepted by the railroad companies for carriage to and from such stockyards, including such shipments as are interstate, is a common carrier engaged in interstate commerce by railroad within the meaning of the safety appliance law of Congress, although the cars in which it transports such shipments are in every instance the cars of the railroad company from which the shipment is received or to which it is delivered at the transfer track, and although the stockyards company does not collect the compensation for its service directly from the shippers or consignees, but only from the railroad companies delivering the loaded cars to it, or receiving them from it, at the transfer track, and although its service is performed and its compensation is paid in accordance with a contract between it and the railroad companies.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 27.*]

(Syllabus by the Court.)

In Error to the District Court of the United States for the District of Nebraska.

For opinion below, see 161 Fed. 919.

Frank T. Ransom, for plaintiff in error.

Luther M. Walter, Special. Asst. U. S. Atty. (Charles A. Goss, U. S. Atty., and A. W. Lane, Asst. U. S. Atty., on the brief).

Before VAN DEVANTER, Circuit Judge, and W. H. MUNGER, District Judge.

VAN DEVANTER, Circuit Judge. The single question to be considered in this case is, Is the Union Stockyards Company of Omaha a "common carrier engaged in interstate commerce by railroad," within the meaning of the safety appliance law of Congress, Acts March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), April 1, 1896, c. 87, 29 Stat. 85, and March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1907, p. 885)? In the District Court, where the question arose upon an agreed statement of facts, it was answered in the affirmative. 161 Fed. 919. The facts disclosed by the agreed statement are substantially as follows: The stockyards company is a Nebraska corporation, and owns and conducts an extensive stockyards at

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

South Omaha equipped with many sheds or pens wherein it receives, feeds, waters, cares for, and otherwise handles live stock as directed by the owners thereof. On the margin of and adjoining its yards are several large packing houses wherein live stock is slaughtered and the product is prepared for shipment to market. Some other industrial plants are also similarly located. Upon its premises it owns, maintains, and uses, conformably to its articles of incorporation, 35 miles of railroad tracks extending from its sheds or pens to a transfer track (also upon its premises) which connects with the railroads of the 8 or 10 railroad companies doing business at South Omaha. It receives from these companies at the transfer track cars loaded with live stock and other freight, and then, with its own locomotives and employés, moves them over its tracks to their ultimate destination, whether that be its sheds or pens or one of the packing houses or other industrial plants, where it delivers each shipment to the proper consignee. In like manner it moves cars loaded with live stock and other freight from its sheds or pens and the several packing houses and other industrial plants to the transfer track, and there delivers them to the railroad companies designated by the shippers. And in the same way it returns the empty cars to the transfer track after the in-bound freight has been unloaded, and takes empty cars from that track to its sheds or pens and to the several packing houses and other industrial plants so that out-bound freight may be loaded into them. The cars moved over its tracks are in every instance the cars of the railroad company from which the shipment is received, or to which it is delivered. Neither in-bound nor out-bound shipments are broken or transferred from one car to another at the transfer track, but instead are carried in the same cars from the point of origin to the point of ultimate destination, including that part of the carriage which is over the stockyards company's tracks. Of the in-bound live stock about 45 per cent. is from states other than Nebraska, and of the out-bound about 87 per cent. is destined to other states. The stockyards company does not issue any bills of lading, does not collect any charge for its service directly from shippers or consignees, and does not participate in establishing any through rates inclusive of its service, but it does exact fixed charges (on the car basis) for that service, and collects them monthly from the several railroad companies from which the shipments are received or to which they are delivered. It has no stations in its yards other than the places where live stock and other freight are unloaded and loaded at its sheds or pens and at the several packing houses and other industrial plants. It does not hold itself out as ready or willing generally to carry freight for the public, but only to carry such as is offered in the manner and at the places here described. All of the railroad companies whose roads connect with the transfer track are common carriers engaged in moving interstate commerce, and it is in accordance with a contract with them that the carriage over the tracks of the stockyards company is conducted, and the compensation therefor is paid, in the manner here described. In the contract this carriage is spoken of as "switching," and the compensation therefor as a "switching charge." The number of cars carried by the stock-

yards company over its tracks each day is about 625. Other facts disclosed in the agreed statement are deemed immaterial.

It is the contention of counsel for the stockyards company that the service performed by it is such only as the railroad companies are bound to perform for their patrons; that having no facilities for performing this service at South Omaha the railroad companies merely employ the stockyards company to furnish the requisite facilities and to operate them; that the performance of this service under such an employment does not make the stockyards company a common carrier, or its property used therein a railroad; and that this service is purely a local switching service, which follows or precedes transportation, and is not interstate commerce.

The discussion will be simplified, but not otherwise affected, if we put out of view the dead freight to and from the packing houses and other industrial plants, and consider only the live freight to and from the sheds or pens.

It must be conceded that the stockyards company would not be a common carrier, nor the property used by it a railroad, if its operations were confined to maintaining the sheds or pens, to unloading shipments thereto, to loading shipments therefrom, and to feeding, watering, caring for, and otherwise handling live stock therein. But its operations are not thus confined. On the contrary, they include the maintenance and use of railroad tracks and locomotives, the employment of a corps of operatives in that connection, and the carriage for hire over its tracks of all live stock destined to or from the sheds or pens, which, in effect, are the depot of the railroad companies for the delivery and receipt of shipments of live stock at South Omaha. The carriage of these shipments from the transfer track to the sheds or pens and vice versa is no less a part of their transit between their points of origin and destination than is their carriage over any other portion of the route. True, there is a temporary stoppage of the loaded cars at the transfer track, but that is merely incidental, and does not break the continuity of the transit any more than does the usual transfer of such cars from one carrier to another at a connecting point. And it is of little significance that the stockyards company does not hold itself out as ready or willing generally to carry live stock for the public, for all the railroad companies at South Omaha do so hold themselves out, and it stands ready and willing to conduct, and actually does conduct, for hire a part of the transportation of every live stock shipment which they accept for carriage to or from that point, including such shipments as are interstate. Moreover, the Supreme Court of Nebraska pronounces it a common carrier in the special line to which it devotes its energies, although not a common carrier for all purposes. State ex rel. v. Union Stockyards Co. (Neb.) 115 N. W. 627, 631. In these circumstances controlling decisions leave no room to doubt that it is a common carrier engaged in interstate commerce by railroad within the meaning of the safety appliance law. United States v. Colorado & N. W. R. Co., 157 Fed. 321, 85 C. C. A. 27, 15 L. R. A. (N. S.) 167, petition for certiorari denied 209 U. S. 544, 28 Sup. Ct. 570, 52 L. Ed. 919; United States v. Colorado & N. W. R.

Co., 85 C. C. A. 48, 157 Fed. 342; Chicago, M. & St. P. Ry. Co. v. Voelker, 129 Fed. 522, 65 C. C. A. 226, 70 L. R. A. 264; Johnson v. Southern Pacific Co., 196 U. S. 1, 22, 25 Sup. Ct. 158, 49 L. Ed. 363; McNeill v. Southern Ry. Co., 202 U. S. 543, 26 Sup. Ct. 722, 50 L. Ed. 1142; Missouri Pac. Ry. Co. v. Larabee Flour Mills Co., 211 U. S. 612, 624, 29 Sup. Ct. 214, 218, 53 L. Ed. ——; Louisville & Nashville R. Co. v. Central Stockyards Co., 212 U. S. 132, 29 Sup. Ct. 246, 248, 53 L. Ed. ——.

The judgment is accordingly affirmed.