324     APPELLATE COURTS OF ILLINOIS.

Devine v. Chicago & Calumet River R. Co., 174 Ill. App. 324.

## John F. Devine, Administrator, Appellee, v. Chicago & Calumet River Railroad Company, Appellant.

### Gen. No. 17,478.

1. FEDERAL SAFETY APPLIANCE ACTS—*Apply to switch engine in yards of foundry.* A railway engine used for completing deliveries from trunk lines to a foundry, is used on a railroad engaged in interstate commerce, and comes within the purview of the federal safety appliance acts, even though also used as a switch engine in the foundry yards.

2. STATE SAFETY APPLIANCE ACT—*applies to switch engine in yards of foundry.* A railway engine used for completing deliveries of freight shipped from points within the state, is engaged in intrastate commerce and subject to the state safety appliance act, even though also used as a switch engine in the foundry yards.

3. SAFETY APPLIANCE ACTS—*broad construction.* In an action for death of plaintiff's intestate caused by injuries received as a switchman, the safety appliance act should be given a broad construction so that its purpose will not be defeated.

4. SAFETY APPLIANCE ACTS—*proximate cause.* In an action for death of plaintiff's intestate, it is a question for the jury as to whether a defective coupler used in violation of the state and federal acts is the proximate cause of the deceased's injury and death.

5. APPEALS AND ERRORS—*harmless error.* When the trial judge has a conference in his chambers with attorney for plaintiff regarding instructions before marking them, although defendant's attorneys are excluded, no injury results to defendant where all questions raised by the instructions were saved by exceptions.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the HON. WILLIAM H. McSURELY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Affirmed. Opinion modified and refiled December 3, 1912.

FRANK M. COX and R. J. FELLINGHAM, for appellant; ANDREW R. SHERIFF, of counsel.

JAMES C. McSHANE, for appellee.

MR. JUSTICE BARNES delivered the opinion of the court.

Plaintiff recovered a judgment of $10,000 for damages resulting from the death of plaintiff's intestate, caused by injuries received while working for defendant as switchman. The case was submitted to a jury upon two counts of the declaration only, one of which charged a violation of the State railroad safety appliance act, and the other a violation of the Federal railroad safety appliance act—in that the defendant used upon its railroad in moving traffic a locomotive engine equipped with an automatic coupler in such inoperative condition that it could not be uncoupled from the side of the engine, and necessitated the switchman's going between the ends of the engine and the car from which it was to be uncoupled. Both counts alleged that the deceased was required to and did go and ride between the engine and the car for the purpose of uncoupling them, and by reason of the inoperative condition of the coupling appliance was injured while in such position at the time that the engine ran off the track.

By special pleas defendant denied that it was "at the time," etc., a common carrier engaged in moving traffic upon its railroad between points in the State of Illinois (as charged in one count), or a common carrier by railroad, and as such engaged upon, by or in connection with its said railroad in intrastate commerce (as charged in the other count).

The questions for consideration arise upon the following state of facts: Deceased, a switchman in defendant's employ, was riding upon the front footboard of defendant's locomotive engine for the purpose of uncoupling it from three freight cars which the engine was pushing ahead of it in making what is called a "kicking" switch. The engine was derailed at or just after it passed over a certain frog in switching to a stub switch track within the yards of the Western Steel Car & Foundry Company at Hegewisch, Illinois, and deceased was found immediately after the accident with his feet caught and crushed between the foot-

326          Appellate Courts of Illinois.

Devine v. Chicago & Calumet River R. Co., 174 Ill. App. 324.

board and the ground, and the injuries he sustained resulted in his death about six months later.

At the time of the accident, the engine was switching from one part of the yard to another cars containing waste material from the company's plant, which was to be unloaded in another part of the yard. The tracks in question were part of a system of tracks within said yard owned by the foundry company, and were connected with tracks outside of the plant owned and used by defendant for receiving cars from and delivering them to certain trunk railroad lines engaged in both state and interstate commerce. Cars from said trunk lines containing freight consigned to the foundry company and two or three other industrial companies were delivered on these outside tracks for delivery by defendant to said companies, and were hauled by its engine to their respective plants, those for said foundry company being hauled into its enclosed yards; and defendant received its compensation therefor from said trunk lines, and thus participated in the freight rate on the cars thus delivered. Defendant also received compensation from the foundry company under a special agreement for hauling and switching cars from one part of its plant to another, including those used in transferring its waste material as aforesaid.

Defendant operated two locomotive engines, only one of which was actually in use at the time of the accident, but it was used for completing deliveries from trunk lines as aforesaid and returning the empty cars thereto, as well as for switching within the enclosure under its agreement with said foundry company.

Upon this state of facts, appellants' contentions are, (1) that the switching at the time of the accident was not in anywise connected with either state or interstate commerce; (2) that the negligence charged was not the proximate cause of the injury.

Under the first contention there is nothing new for consideration except the special state of facts to which

the law is to be applied. Since appellant's brief was filed herein, the Supreme Court of the United States, in Southern Ry. Co. v. United States, 222 U. S. 20, has given construction to the safety appliance acts of Congress (27 Stat. 531, c. 196; 32 Stat. 943, c. 976), which renders it unnecessary to consider at length many of the points discussed by appellant. It was there held that "the original act as enlarged by the amendatory one is intended to embrace all locomotives, cars and similar vehicles used on any railroad which is a highway of interstate commerce," and the court added, "without regard to the class of traffic which the cars are moving."

It was urged there, as it is here, that the true test of the application of the words, "on any railroad engaged" (found in the first clause of the amendatory act), to a locomotive, car or similar vehicle would be, as it was under the original act, the use of the vehicle in moving interstate traffic, but the court held that its true test, "is the use of the vehicle on a railroad which is a highway of interstate commerce, and not its use in moving interstate traffic."

Inasmuch as the locomotive engine in the case at bar was used to complete deliveries for several railroads conceded to be engaged in interstate commerce, we think, under the reasoning of said decision, it came within the purview of the federal safety appliance acts, and that it is immaterial what was the character of the traffic or nature of the work at the time of the accident, provided the locomotive engine was one which was generally and customarily used and kept in readiness for use "on a railroad engaged in interstate commerce."

Can the locomotive engine be said to have been used on a highway of interstate commerce? The freight customarily hauled by said engine to and from defendant's outside tracks, connecting as aforesaid with several trunk lines, was consigned and shipped over said lines in interstate commerce in one continuous

passage. In the United States v. Colorado & N. W. R. Co., 85 C. C. A. 27, 157 Fed. 321, where a short and narrow gauge railroad, wholly within the state of Colorado, hauled in its train a car of an independent express company which carried express matter that came from without the state, the court said:

"Every part of every transportation of articles of commerce in a continuous passage from an inception in one state to a prescribed destination in another, is a transaction of interstate commerce. * * * Their transportation never ceases to be a transaction of interstate commerce from its inception in one state until the delivery of the goods at their prescribed destinations in another, and every one who participates in it, who carries the goods through any part of their continuous passage, unavoidably engages in interstate commerce."

Several decisions in support of such proposition are cited by the court and need not here be referred to.

In Union Stock Yards Co. v. United States, 94 C. C. A. 626, it was held that a stock yards company which maintained and used railroad tracks extending from its sheds or pens to a transfer track connected with the tracks of several railroad companies engaged in interstate commerce, and which received several loaded cars from and returned empty cars to said transfer track for compensation from said companies for such service, was a common carrier engaged in interstate commerce, and that the carriage of these shipments from the transfer track to the sheds or pens, and *vice versa,* was a part of their transit between their points of origin and destination. To the same effect see Pacific Coast R. Co. v. United States, 98 C. C. A. 31; Belt R. Co. of Chicago v. United States, 93 C. C. A. 666.

On the question of whether defendant was engaged in intrastate traffic so as to be amenable to the safety appliance act of this state, we think that inasmuch as it appeared from the evidence that freight and coal

were in the same manner shipped into the foundry company from points within the state and its manufactured articles were in like manner moved and delivered on consignment to points within the state, defendant, by the same reasoning must be said to have been engaged as a common carrier in intrastate as well as interstate commerce. There was no error, therefore, in admitting the evidence and giving the instructions which related to the count charging a violation of the state safety appliance act.

In Schlemmer v. Buffalo R. & P. R. Co., 205 U. S. 1, the court said the phrase, "used in moving interstate commerce," occurring in the federal act, should not be taken in a narrow sense. We think, to effect the real purposes of the state act, the same broad construction should be given to the phrase, "engaged in moving traffic by railroad between points in this state," occurring in section 1. The second section makes it unlawful for "any such common carrier to haul or permit to be hauled, or used on its line, any locomotive," etc., "not equipped with couplers," etc. The act is broad enough to apply to the locomotive, etc., of such a road regardless of the precise nature of the business it may be engaged in at the time of the accident. The purpose of the act is to secure the safety of a railroad employee engaged upon such locomotive, and such purpose would be defeated by the narrow construction of the state act contended for by appellant in this case, which would limit the application of the act to such locomotives only when they are actually employed in a movement which meets the technical definition of intrastate commerce.

Was the defective coupler the proximate cause of the deceased's injury and death? In Milwaukee & St. P. R. Co. v. Kellogg, 94 U. S. 469, it was said:

"What is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attend-

330    APPELLATE COURTS OF ILLINOIS.

Devine v. Chicago & Calumet River R. Co., 174 Ill. App. 324.

ing it." See, also, North Chicago St. R. Co. v. Dudgeon, 184 Ill. 477; Pullman Palace-Car Co. v. Laack, 143 Ill. 242; Illinois Cent. R. Co. v. Siler, 229 Ill. 390.

Both the state and federal acts make it unlawful for the common carrier to haul or use on its line any locomotive, etc., "not equipped with couplers, coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." The evidence tended to show that in the switching operations engaged in at the time of the accident, deceased was required to stand on the footboard in question in order to couple or uncouple the cars; that to raise the coupling pin to uncouple the car from the engine in the particular movement being made, it was necessary for him to go between the engine and the car and take hold of a chain to raise it; that there was no way to keep the pin up when the car was uncoupled, and that he had to hold it up until the engine and car separated; and that there was evidence tending to show that there were appliances that would hold the pin up until the engine and car separated without the necessity of the switchman's riding between the engine and the car. We think, therefore, it was a question of fact properly submitted to the jury to determine whether, under such circumstances, deceased having been injured in the course of a switching movement, which required him during some portion of it thus to go between the cars for the purpose of effecting an uncoupling, the use of a defective coupler requiring him to do so was the proximate cause of the injury. Error is claimed in the refusal of the court to give certain instructions asked for by the defendant relating to proximate cause. We think the jury was properly instructed on the subject, and that no error was committed in the refusal of said instructions, and what we have already said respecting appellant's contentions obviates the necessity of considering specifically its exceptions to the giving and refusing of other instructions.

It is urged that deceased might have pulled out the pin before the car started and put himself in a different position off or on the engine. The questions of assumed risk and contributory negligence are not involved in this case. Luken v. Lake Shore & M. S. R. Co., 248 Ill. 377.

Counsel for appellant complain that the trial judge had a conference with the attorney for plaintiff in his chambers in reference to the instructions before marking them, and that defendant's attorneys were barred from said conference. No injury to defendant resulted therefrom inasmuch as all questions raised by the instructions were saved by the exceptions duly taken to the giving and refusing them, with respect to which we find no reversible error.

The judgment will be affirmed.

*Affirmed.*