GAMBLE-ROBINSON COMMISSION CO. v. CHICAGO & N. W. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. March 22, 1909.)

No. 2,712.

1. CARRIERS (§ 32*) — INTERSTATE COMMERCE ACT — NO DISCRIMINATION BY DEMAND OF PREPAYMENT OF CHARGES.

An interstate carrier does not subject a consignee to an undue or unreasonable prejudice or disadvantage under section 3 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3155]) by exacting, after due notice to it, the prepayment of charges for transportation of all property consigned to it, while it does not require such charges to be paid in advance upon freight consigned to others similarly situated.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 84; Dec. Dig. § 32.*]

2. CARRIERS (§ 32*)—INTERSTATE COMMERCE ACT PROHIBITS UNDUE AND UNREASONABLE PREJUDICES AND DISADVANTAGES ONLY.

The interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) does not prohibit the giving of all preferences and advantages, or the production of all prejudices and disadvantages, but only those that are undue and unreasonable.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 84; Dec. Dig. § 32.*]

3. CARRIERS (§ 32*)—SAME—CARRIER MAY EXERCISE COMMON-LAW RIGHTS SAVE AS PROHIBITED BY INTERSTATE COMMERCE ACT.

A common carrier has the right under the common law to demand the prepayment of charges for freight of one, and to give credit for them to another similarly situated.

An interstate common carrier is free to exercise all his rights under the common law to the full extent to which such exercise has not been made unlawful by the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]).

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 84; Dec. Dig. § 32.*]

4. CARRIERS (§ 32*)—BAD MOTIVE FOR LAWFUL ACT CREATES NO CAUSE OF ACTION.

The fact that a carrier, for the purpose of injuring the business of a consignee, or harassing it, subjects it to a prejudice or disadvantage which is neither undue nor unreasonable, does not change the nature of the prejudice or disadvantage or create any cause of action therefor.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 84; Dec. Dig. § 32.*]

5. CARRIERS (§ 32*)—INTERSTATE COMMERCE ACT—PREPAYMENT OF CHARGES FOR FREIGHT—"UNDUE OR UNREASONABLE PREJUDICE OR DISADVANTAGE"—FACTS—CONCLUSION.

The plaintiff is a corporation engaged in buying, selling, and dealing for commissions in fruit, vegetables, and dairy products at Minneapolis, and it has offices at St. Paul, Rochester, and Mankato, in Minnesota, and Aberdeen in South Dakota. The defendant is a common carrier. It has railroad stations at those towns, and lines of railroad through those states and adjoining states. It is the custom and usage of such carriers, and of the defendant, for the terminal carrier to advance the charges of connecting lines upon freight consigned to parties at those stations, to transport the freight and deliver it to the consignees, also to receive freight at its stations and to transport and deliver it to the consignees, to hold the bills until the questions regarding the correctness of the charges on its lines and on the connecting lines have been adjusted, and then to collect the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bills of the consignees. From a bad motive the defendant, after notice, refused to advance charges to connecting lines, to receive and transport freight consigned to the plaintiff, unless the charges upon it for transportation were prepaid, while it continued to give credit to other consignees similarly situated according to the usage and custom.

*Held:* These acts did not subject the plaintiff to undue or unreasonable prejudice or disadvantage within the meaning of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]).

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 84; Dec. Dig. § 32.*]

Hook, Circuit Judge, dissenting.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Minnesota.

The alleged error in this case is that the court below sustained a demurrer to the plaintiff's complaint, and the material facts alleged therein were these: The plaintiff is a corporation engaged in buying and selling fruit, vegetables, farm and dairy products, and in a general commission business in these commodities at the city of Minneapolis, in the state of Minnesota, and it has branch offices at St. Paul, Rochester, and Mankato in that state, and at Aberdeen in South Dakota. The defendant is a railroad corporation and a common carrier. It has offices, agents, and agencies in St. Paul and Minneapolis. It owns and operates railroads in Iowa, Illinois, Minnesota, Dakota, and Wisconsin, and it has direct connections, by means of its own or other railroads, between its stations in those states and St. Paul, Minneapolis, Mankato, Rochester, and Aberdeen. Prior to December 15, 1906, it was the uniform custom and usage of railroad carriers, and of the defendant, to accept shipments of the products that have been named at local stations without the prepayment of freight, to take from the shipper a written guaranty of such payment, to deliver the products to the consignees in the cities named, and afterwards to collect of these consignees the charges for transportation, "and in case of any question arising as to the correctness of any transportation charge upon the line of the terminal or any connecting carrier, such terminal carrier takes the matter up for adjustment and holds the freight bills until an adjustment is made." In case shipments of these products were received by carriers from connecting lines, the custom and usage was for the terminal carrier to pay the charges of the connecting lines and to collect for the entire transportation from the consignees at destination after it had delivered the goods to them. These customs and usages prevailed in transactions between common carriers and all reputable and responsible business houses, and the plaintiff was one of that character. The plaintiff had built up a commission business, a large part of which can be conducted only by the use of the defendant's railroad, and the charges for transportation which it paid to the defendant amounted to several thousand dollars a month. On December 15, 1906, the defendant notified its agents and connections that it would not thereafter accept freight consigned to the defendant, either from shippers or from connecting lines, unless the transportation charges thereon were prepaid, and it has since refused to accept such freight without prepayment. At the same time it has continued to receive for and to deliver freight to the competitors of the plaintiff who are similarly situated without the prepayment of transportation charges. This course of action was adopted by the defendant to harass the plaintiff, to injure its business and its credit, to give its competitors an unequal and unreasonable preference and advantage, and to subject it to an unequal and unreasonable prejudice in the transaction of its business, and it has that effect. It has impaired the plaintiff's credit and its financial responsibility and caused it considerable loss of business, and for these damages it demands a judgment of $50,000.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Walter Holsinger, for plaintiff in error.

L. L. Brown (W. D. Abbott and S. H. Somsen, on the brief), for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge (after stating the facts as above).   Section 3 of the act of February 4, 1887, commonly called the "Interstate Commerce Act," provides:

"That it shall be unlawful for any common carrier subject to the provisions of this act, to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation or locality, or any particular description of traffic in any respect whatsoever, or to subject any particular person, company, firm, corporation or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."   24 Stat. 380, c. 104 (3 U. S. Comp. St. 1901, p. 3155).

Is it a violation of this section for a common carrier which customarily delivers to consignees a certain class of freight, holds the freight bills until after any question arising concerning the correctness of any transportation charges upon its line and upon connecting lines over which the freight has been transported has been adjusted, and then collects them, to refuse to grant such a credit to a particular consignee and to require prepayment of freight bills by it while it still continues to extend credit to others similarly situated?   In other words, is it a violation of this section for a railroad company to refuse to loan to one consignee without interest the moneys owing to it for transportation charges earned by it and for those paid by it to connecting lines until the consignee's claims that such charges are incorrect have been settled, when it customarily makes such loans to other consignees?   This is the question which this case presents, and it is well to perceive clearly the nature of the controversy inherent in it and the amount actually involved before entering upon the discussion of the issue it presents.

The plaintiff is a commission company dealing in perishable products, such as fruit, vegetables, farm and dairy products, claims for errors in the transportation charges upon which and for damages from the transportation of which frequently arise and are met with great difficulty after the products have been delivered.   The plaintiff alleges that it is the custom of the terminal carriers to advance the transportation charges upon such products to connecting lines, to deliver the products to the consignees, "and afterwards to collect the reasonable and proper charges for transportation, and, in case of any question arising as to correctness of any transportation charge upon the line of the terminal or any connecting carrier, such terminal carrier takes the matter up for adjustment and holds the freight bills until an adjustment is made," and that the defendant has refused to follow this custom and has demanded of it prepayment of the transportation charges on the freight consigned to it, and has refused to accept the freight without such prepayment, although it follows the custom in the treatment of its competitors similarly situated.   It further alleges

that the sum paid by it to the defendant for its transportation charges and those of connecting lines has amounted to several thousand dollars per month. A liberal interpretation of several thousand in this pleading is three thousand, and the complaint fails to show that the actual amount involved here is more than the interest on $3,000, for by the deposit with the railroad company at the commencement of each month of $3,000 to prepay its charges for freight during that month all of its alleged $50,000 damages would have been avoided. In the light of these facts, we turn to the question of law to be determined.

There is a statute of the state of Minnesota which declares that it is unlawful for any common carrier to make or give any unequal or unreasonable preference to any person or corporation, or to subject any person or corporation to any unequal or unreasonable prejudice (Rev. Laws Minn. 1905, § 2009), and counsel argues that his complaint states a cause of action under this statute. There is, however, no averment in it of any diversity of citizenship of the parties or of any other ground of jurisdiction of a national court over a cause of action for the violation of this state statute, and for that reason the question whether or not the facts alleged disclose a disregard of that law was not judicable in the court below and is not so here, and it is dismissed without further consideration. Little Rock & Memphis R. Co. v. St. Louis S. W. Ry. Co., 11 C. C. A. 417, 419, 63 Fed. 775, 777, 26 L. R. A. 192.

Prior to the enactment of the act of February 24, 1887, to regulate commerce among the states, interstate railway traffic was regulated by the principles of the common law, and under those principles common carriers had the right to require the prepayment of charges for freight of one or more persons or corporations, and to give credit for such charges to other persons or corporations similarly situated. Interstate Commerce Commission v. Baltimore & Ohio R. R. Co., 145 U. S. 263, 275, 12 Sup. Ct. 844, 36 L. Ed. 699; Southern Indiana Express Co. v. United States Express Co. (C. C.) 88 Fed. 659, 662; Randall v. Railway Company, 108 N. C. 612, 13 S. E. 137.

That act left common carriers free to exercise to their full extent all the rights and privileges they had under the common law, so far as these rights and privileges and their exercise were not rendered unlawful by the provisions of that act. That act did not make all preferences, advantages, prejudices, or disadvantages unlawful, but those only which are "undue and unreasonable." Atchison, Topeka & Santa Fé R. R. Co. v. Denver & New Orleans R. R. Co., 110 U. S. 667, 673, 680, 682, 4 Sup. Ct. 185, 28 L. Ed. 291, in which the Supreme Court held that under the Constitution of Colorado, which prohibited any undue or unreasonable discrimination in charges or facilities, the refusal of the Santa Fé Railroad Company to stop its passenger trains at a junction of the railroad of the New Orleans Company with its railroad, to carry passengers and freight from that point at the same rate which it would receive if the passengers or freight were carried from the junction of the Santa Fé Company and the Denver & Rio Grande Railway Company in the same town, and to grant to the New Orleans Company through billing, through routing, through ticketing, and through checking of baggage, when it granted

all these things to the Denver & Rio Grande Railway Company, a competitor of the New Orleans Company, was no violation of this Constitution, because the preferences, advantages, prejudices, and disadvantages thus created, though clearly discriminatory, were not undue or unreasonable.    Although the opinion in this case was not a construction of the interstate commerce act, it interpreted a provision in the Constitution of Colorado identical in effect with the paragraph in the third section of that act under consideration, and furnished the standard for its construction, as Judge Jackson declared in Kentucky & I. Bridge Co. v. Louisville & N. R. Co. (C. C.) 37 Fed. 567, 629, 2 L. R. A. 289.

Interstate Commerce Commission v. Baltimore & Ohio R. R. Co., 145 U. S. 263, 276, 12 Sup. Ct. 844, 848, 36 L. Ed. 699, where the Supreme Court held that the charge of a less rate for the transportation of 10 or more persons on a party rate ticket than was charged a single individual, although it created clear inequality and discrimination, did not give to the former an undue or unreasonable preference or subject the latter to an undue or unreasonable disadvantage within the meaning of the third section of the act under consideration, and said, "It is not all discriminations or preferences that fall within the inhibition of the statute; only such as are unjust or unreasonable"— page 276 of 145 U. S., page 848 of 12 Sup. Ct. (36 L. Ed. 699), affirming Interstate Commerce Commission v. Baltimore & Ohio R. R. Co. (C. C.) 43 Fed. 37, 46, 47.    Interstate Commerce Commission v. Detroit, Grand Haven & Milwaukee Ry. Co., 167 U. S. 633, 644, 17 Sup. Ct. 986, 42 L. Ed. 306.

Oregon Short Line & U. N. Ry. Co. v. Northern Pacific R. Co. (C. C.) 51 Fed. 465, 466, 467, 472, 473; Oregon Short Line & U. N. Ry. Co. v. Northern Pacific R. Co., 9 C. C. A. 409, 410, 412, 413, 61 Fed. 158, 159, 161, 162.    In this case the Northern Pacific Company, which owned a railroad from Portland, Or., to Seattle, Wash., and St. Paul, Minn., refused to receive and transport freight originating east of the 97th meridian and destined to points on its own line and on its connecting lines north of Portland tendered to it by the Short Line Company when such freight was in cars other than its own, unless the Short Line Company would pay to the owner of the cars the usual car mileage for their use, or would transfer such freight from the foreign cars into those of the Northern Pacific Company at Portland, and it also refused to transport such freight unless its charges from Portland to destination were paid, and refused to pay upon receiving the freight the charges due to the Short Line Company and its connecting lines for transporting this freight to Portland, while at the same time it received and transported freight originating west of the 97th meridian without any of these conditions, and paid the charges for its transportation to Portland, and it also received and transported freight originating both east and west of said meridian for the Southern Pacific Company without making any of these exactions. The Northern Pacific Company also refused to transport passengers destined to Puget Sound and other points on its lines upon through tickets from points east of the 105th meridian issued by the Short

Line Company, although it received and transported passengers on through tickets issued by that company from points west of that line and on through tickets issued by the Southern Pacific Company from all points. Mr. Justice Field, in the Circuit Court and the Circuit Court of Appeals, decided that, while these acts constituted clear discriminations, they created no undue and unreasonable preferences, advantages, prejudices, or disadvantages, and hence that they were not violative of the interstate commerce act.

Little Rock & Memphis R. Co. v. St. Louis, Iron Mountain & Southern Ry. Co., Same v. St. Louis S. W. Ry. Co., Same v. Little Rock & Ft. Smith Railway Co. (C. C.) 59 Fed. 400, 406; Id., 11 C. C. A. 417, 63 Fed. 775, 26 L. R. A. 192. In these cases the complainant was the Little Rock & Memphis Railroad Company. The St. Louis, Iron Mountain & Southern Railway Company refused to receive any freight from the complainant at Little Rock without a prepayment of charges, not because it was unwilling to extend credit, but from a desire to oppress that company, while it received freight at that point from all other persons and corporations without the prepayment of charges. The St. Louis Southwestern Company and the Little Rock & Ft. Smith Railway Company refused to honor through tickets or through bills of lading issued by the complainant, or to enter into any arrangement for through billing or through rating, while they honored such bills and tickets and made such arrangement with other railroad companies similarly situated. They also refused to accept and transport loaded cars coming from the complainant's railroad, and required the freight to be rebilled and reloaded into their own cars at points of junction, while they accepted and transported loaded cars coming under similar circumstances from the roads of other companies without any rebilling or reloading. Although these acts clearly gave preferences and advantages to the other companies similarly situated, and subjected the complainant to prejudices and disadvantages, the Circuit Court and this court, after exhaustive argument and upon careful consideration, held that these were neither undue nor unreasonable, and that they constituted no violation of the interstate commerce law. No contrary decision of the Supreme Court, or of any of the Circuit Courts of Appeals, of any of the questions decided by the cases which have just been reviewed, has come to our attention, but the decisions in those cases have been repeatedly followed. Prescott & A. C. R. Co. v. Atchison, Topeka & Santa Fé R. Co. (C. C.) 73 Fed. 438, 439; Central Stockyards Co. v. Louisville & Nashville Ry. Co., 192 U. S. 568, 570, 571, 24 Sup. Ct. 339, 48 L. Ed. 565; Louisville & Nashville R. R. Co. v. West Coast Naval Stores Co., 198 U. S. 483, 497, 498, 25 Sup. Ct. 745, 49 L. Ed. 1135.

General statements that there must be no difference in charges not based on difference in service, that rates must be equal to all under like conditions, and that unjust and unreasonable discrimination is forbidden may be found in the opinions of the courts and of the Interstate Commerce Commission in cases in which they were discussing radical differences in the direct charges for transportation under like conditions (Western Union Telegraph Co. v. Call Publishing Co., 181 U. S. 92, 100, 21 Sup. Ct. 561, 45 L. Ed. 765; Cincinnati, New Or-

leans & Texas Pacific Ry. Co. v. Interstate Commerce Commission, 162 U. S. 184, 16 Sup. Ct. 700, 40 L. Ed. 935; United States v. Vacuum Oil Co. [D. C.] 153 Fed. 598, 606, 607; Hays v. Pennsylvania Co. [C. C.] 12 Fed. 309; Tift v. Southern Railway Co. [C. C.] 123 Fed. 789, 791; Scofield et al. v. Lake Shore & Michigan Southern Ry. Co., 2 Interst. Com. R. 67; Daniels v. Chicago, Rock Island & Pacific Ry. Co., 6 Interst. Com. R. 458; Page v. Delaware, Lackawanna & W. R. R. Co., 6 Interst. Com. R. 548; St. Louis Hay & Grain Co. v. Mobile & Ohio R. R. Co., 11 Interst. Com. R. 90, 101), and in cases in which the carriers absolutely refused to carry the property tendered on any terms, as in Crescent Liquor Company v. Platt (C. C.) 148 Fed. 894, 903, or to furnish cars at proper times and places where the rates were the same, as in Castle v. Baltimore & Ohio R. R. Co., 8 Interst. Com. R. 333, 344. Opinions of state courts may also be cited under statutes which depart from the language and the true interpretation of the Interstate commerce act, and require certain carriers to grant "equal terms, facilities, accommodations and usages," and forbid them from "granting any terms, credit, privileges, advantages, usages or facilities" to one that are not granted to all (Burns' Ann. St. Indiana 1901, § 3312b), which hold that every person or corporation is lawfully entitled to every privilege and courtesy extended to any other similarly situated, so that under these statutes and decisions no carrier may waive any right or extend any courtesy to any person or corporation without becoming legally bound to do likewise to every other person or corporation under similar conditions, and under this statute of Indiana there is even a decision that if a corporation customarily waives its right to prepayment of freight, pays charges of connecting carriers, and grants credit, it is required by that statute to do so for all. Adams Express Company v. State, 161 Ind. 328, 67 N. E. 1033, 1039.

But such are not the terms and such is not the meaning or the effect of the interstate commerce act. The true interpretation of that act is illustrated by the decisions which have been reviewed. It was expressed by Judge Jackson, afterwards Mr. Justice Jackson of the Supreme Court, in Interstate Commerce Commission v. Baltimore & Ohio R. R. Co. (C. C.) 43 Fed. 37, in these words, which have been subsequently three times affirmed and adopted by the Supreme Court of the United States as the true interpretation of this law:

"Subject to the two leading prohibitions that their charges shall not be unjust or unreasonable, and that they shall not unjustly discriminate, so as to give undue preference or disadvantage to persons or traffic similarly circumstanced, the act to regulate commerce leaves common carriers as they were at the common law, free to make special contracts looking to the increase of their business, to classify their traffic, to adjust and apportion their rates so as to meet the necessities of commerce, and generally to manage their important interests upon the same principles which are regarded as sound, and adopted in other trades and pursuits." Interstate Commerce Commission v. Cincinnati, New Orleans & Texas Pacific Ry. Co., 167 U. S. 479, 493, 17 Sup. Ct. 896, 42 L. Ed. 243; Cincinnati, New Orleans & Texas Pacific Ry. Co. v. Interstate Commerce Commission, 162 U. S. 184, 196, 197, 16 Sup. Ct. 700, 40 L. Ed. 935; Interstate Commerce Commission v. Baltimore & Ohio R. R. Co., 145 U. S. 263, 12 Sup. Ct. 844, 36 L. Ed. 699; Interstate Commerce Commission v. Alabama Midland Ry. Co., 168 U. S. 144, 173, 18 Sup. Ct. 45, 42 L. Ed. 414.

The question, therefore, is, did the defendant subject the plaintiff to any undue or unreasonable prejudice or disadvantage by requiring it to prepay the charges on its freight while the carrier customarily transported freight for others similarly situated without such prepayment? The defendant had the right under the common law to demand prepayment of its charges of the plaintiff and to grant credit to others for similar charges. It had the same right in this regard that every merchant, every man, and every corporation has to grant credit to one or to all but one, and to refuse it to others or to him. There was nothing unjust or morally wrong in the exercise of this right, because the plaintiff had no moral right to the extension of credit, and justice did not require that the defendant should grant to the plaintiff the same credit that it extended to others.

The interstate commerce act did not expressly deprive the defendant of this right or make its exercise unlawful; so far as its express provisions are concerned, it left the right and its exercise among those which the Supreme Court declared that carriers were free to exercise and to manage upon "the same principles which are regarded as sound, and adopted in other trades and pursuits."

The refusal to extend credit to a purchaser of goods, or of transportation, of financial responsibility, credit, and reputation equal to those of others to whom such credit is extended does not in the nature of things subject him to an undue or unreasonable prejudice or disadvantage, while a requirement that such a vendor shall extend equal credit to all purchasers of equal financial responsibility, credit, and reputation, would subject him to unreasonable and undue disadvantage. Reason, sound business principles, and the practice of the business world give the option to extend credit to the seller of his property, or his services, and to the loaner of his money, and not to the purchaser or borrower. There are other considerations besides financial responsibility, credit, and reputation, which condition the rational extension of credit, such as the experience of the seller or the loaner, the habits of the purchaser or the borrower, his fairness and promptness.

The plaintiff avers that the defendant customarily gives credit to all other responsible and reputable business houses, and that it is a house of that character. Fruit, vegetables, farm and dairy products are perishable in their nature, of a character which renders them susceptible to claims for errors in charges for transportation and for damages during transportation. The usage and custom alleged is that the defendant, the terminal carrier, advances to connecting lines their charges upon these products, delivers them to the consignees, holds the bills for the charges for freight until claims arising from alleged errors therein are adjusted, and then collects them of the consignees. It is not inconceivable that a consignee might present under this usage such claims for errors in charges and for damages in transportation, and might so delay their adjustment and the payment of the charges for freight, that it would thereby secure a much greater advantage and preference over other consignees than the prejudice or disadvantage it would suffer by prepaying its charges for freight.

It is said, however, that the fact that a custom and usage exists not to require the prepayment of such charges renders the requirement of prepayment by the plaintiff, while others are given credit under like circumstances, the imposition of an undue and unreasonable disadvantage and prejudice upon it. But since the requirement of the prepayment of the charges for freight by the plaintiff while others similarly situated are granted credit for these charges subjects the plaintiff to exactly the same degree of prejudice and disadvantage in the absence of such a custom and usage as it does in its presence, the existence of the custom or usage cannot make that prejudice or disadvantage undue or unreasonable if it would not be so if the custom or usage did not exist. Oregon Short Line & U. N. Ry. Co. v. Northern Pacific R. R. Co. (C. C.) 51 Fed. 465, 472; Gulf, C. & S. F. Ry. Co. v. Miami S. S. Co., 30 C. C. A. 142, 155, 86 Fed. 407, 420; Little Rock & Memphis R. Co. v. St. Louis S. W. Ry. Co., 63 Fed. 775, 11 C. C. A. 417, 26 L. R. A. 192.

An attempt has been made in argument to distinguish these and other cases in which the requirement of prepayment of charges for transportation by one while no such requirement was made of others has been held to create no undue preference or disadvantage from the case in hand, upon the ground that those were actions by railroad companies while this is an action by a shipper, or by a consignee of a shipper; but an undue or unreasonable prejudice or disadvantage inflicted upon a railroad company falls under the ban of the law as completely as an undue prejudice or disadvantage imposed upon a shipper or a consignee, and it is more deleterious by as much as all the shippers or consignees over the lines of that carrier affected by it are more numerous than a single shipper or consignee, and by as much as the charges for the transportation of their freight are greater than his. Injury to a class by a violation of the interstate commerce act is far more damaging than to a single member of a class. Crescent Liquor Co. v. Platt (C. C.) 148 Fed. 894, 901.

One of the averments of the plaintiff in his complaint is that the defendant required the plaintiff to prepay its freight, and gave notice to that effect, for the express purpose of harassing and annoying the plaintiff and injuring its business. But the sole question in this case is whether or not the requirement of the prepayment of the charges for freight constituted a violation of the interstate commerce act. If it did, a noble purpose or a good motive constitutes no defense to the cause of action founded upon it. If it did not, a bad motive or an evil purpose creates no cause of action founded upon the exercise of a legal right. "An act which does not amount to a legal injury cannot be actionable because it is done with a bad intent." Boyson v. Thorn, 98 Cal. 578, 33 Pac. 492, 21 L. R. A. 233; Cooley on Torts, pp. 1503, 1505.

Finally, the question at issue in this case in the presence of a custom and usage not to demand prepayment of transportation charges, in the presence of a motive and purpose by the defendant to harass and oppress the plaintiff by the demand of such prepayment, and in the presence of the subjection of the plaintiff in that case to very

much more aggravated prejudice and disadvantage than those alleged in the action under consideration, was presented, decided, and the considered opinion of this court upon it was delivered by Judge Thayer in 1894 in these words:

"It will be observed that the sole question in the cases filed against the St. Louis, Iron Mountain & Southern Railway Company concerns the right of that company to require the prepayment of freight charges on all property tendered to it for transportation at Little Rock by the Little Rock & Memphis Railroad Company, while it pursues a different practice with respect to freight received from other shippers at that station. At common law a railroad corporation has an undoubted right to require the prepayment of freight charges by all its customers, or some of them, as it may think best. It has the same right as any other individual or corporation to exact payment for a service before it is rendered, or to extend credit. Oregon Short Line & U. N. Ry. Co. v. Northern Pacific R. Co. (C. C.) 51 Fed. 465, 472. Usually, no doubt, railroad companies find it to their interest, and most convenient, to collect charges from the consignee; but we cannot doubt their right to demand a reasonable compensation in advance for a proposed service, if they see fit to demand it. This common-law right of requiring payment in advance of some customers, and of extending credit to others, has not been taken away by the interstate commerce law, unless it is taken away indirectly by the inhibition contained in the third section of the act, which declares that an interstate carrier shall not 'subject any particular person, company, corporation or locality * * * to any undue or unreasonable * * * disadvantage in any respect whatever.' This prohibition is very broad, it is true, but it is materially qualified and restricted by the words 'undue or unreasonable.' One person or corporation may be lawfully subjected to some disadvantage in comparison with others, provided it is not an undue or unreasonable disadvantage. In view of the fact that all persons and corporations are entitled at common law to determine for themselves, and on considerations that are satisfactory to themselves, for whom they will render services on credit, we are not prepared to hold that an interstate carrier subjects another carrier to an unreasonable or undue disadvantage because it exacts of that carrier the prepayment of freight on all property received from it at a given station, while it does not require charges to be paid in advance on freight received from other individuals and corporations at such station. So far as we are aware, no complaint had been made of abuses of this character at the time the interstate commerce law was enacted, and it may be inferred that the particular wrong complained of was not within the special contemplation of Congress. This being so, the general words of the statute ought not to be given a scope which will deprive the defendant company of an undoubted common-law right, which all other individuals and corporations are still privileged to exercise, and ordinarily do exercise." Little Rock & Memphis R. Co. v. St. Louis S. W. R. Co., 63 Fed. 777, 11 C. C. A. 419 (26 L. R. A. 192).

The question was decided in the same way by Mr. Justice Field in the Circuit Court in Oregon Short Line & U. N. Ry. Co. v. Northern Pacific R. R. Co., 51 Fed. 465, 473, 474, affirmed by the Circuit Court of Appeals of the Ninth Circuit in 9 C. C. A. 409, 410, 412, 413, 414, 61 Fed. 158, 159, 161, 162, and by the Circuit Court of Appeals of the Fifth Circuit in Gulf, C. & S. F. Ry. Co. v. Miami S. S. Co., 30 C. C. A. 142, 154, 155, 86 Fed. 407, 419, 420. It is more than 14 years since this court rendered that decision, no contrary opinion of any national court upon this question has been called to our attention, and because the right of a common carrier to require prepayment of charges for transportation from one and to give credit for them to another similarly situated existed under the common law, because neither this right nor its exercise were made unlawful by the terms

of the interstate commerce act, because the exercise of that right is not in itself unreasonably prejudicial, or disadvantageous, because the former decision of this court rules this case and ought not to be overruled unless it is clearly wrong, and because upon a careful reconsideration of that decision in the light of the subsequent decisions of the courts we are still convinced that it was right, our conclusion in this case is that the requirement by the plaintiff of the prepayment of charges by the defendant for the transportation of its freight, while no such requirement was made of others similarly situated, while there existed a custom or usage for the carrier to advance the charges of connecting carriers, to deliver the freight to the consignees, to hold bills for freight until claims arising out of errors in transportation charges were adjusted, and then to collect them, did not subject the plaintiff to undue or unreasonable prejudice or disadvantage or give to others similarly situated any undue or unreasonable preference or advantage within the meaning of section 3 of the interstate commerce law, and the judgment below must be affirmed.

It is so ordered.

HOOK, Circuit Judge (dissenting).   The trial court held that a complaint which set forth the following facts did not state a cause of action.   For 15 years the plaintiff and its predecessors had been engaged at Minneapolis, Minn., in buying and selling fruits, vegetables, and farm and dairy products, and in transacting a general commission business in those commodities.   In carrying on its business plaintiff availed itself of the services of defendant and its connections as carriers of interstate commerce.   It had been the uniform custom of defendant and other railroad companies for many years to accept and transport such products as plaintiff handled, and collect the freight charges at destination; and the existence and prosperity of the commission business largely depended upon its continuance.   But on December 15, 1906, defendant, for the purpose of harassing the plaintiff and injuring its business, notified all its agents and connecting lines that:

"Until further advised the company will not accept freight from connecting lines, or at points on its own lines, consigned to the Gamble-Robinson Commission Company unless all charges are prepaid."

This order was enforced against the plaintiff alone.   All other commission houses, competitors of plaintiff and similarly circumstanced, continued to enjoy the benefits and advantages of the established custom.   There was nothing in the financial condition of plaintiff or in its conduct which justified the discrimination against it.

The question which arises on these averments is whether the plaintiff has been subjected "to any undue or unreasonable prejudice or disadvantage in any respect whatever," contrary to the first clause of section 3 of the interstate commerce act of February 4, 1887 (24 Stat. 379).   It is no answer to the question to say that a railroad company is not required to lend money to a shipper, for ordinarily such a transaction could have no relation to or connection with transportation.   Nor is it an answer to say that at common law a railroad company was not

bound to credit a shipper, but had the option of demanding prepayment of transportation charges or of awaiting the arrival of the freight at destination before collecting them. The act of Congress was designed to do away with undue and unreasonable discriminations of every character against shippers, localities, and subjects of traffic, whether they pertained to the common-law duty of the carrier or not, and to that extent the right of a railroad company engaged in interstate commerce to conduct its business as it will has been modified. A discrimination within the statute may be in respect of a course of business conduct which the carrier is at liberty to adopt or not as it chooses. To hold otherwise is to read into the statute something it does not contain, to wit, "the discriminations hereby prohibited relate only to the performance of duties imposed by the common law." So the narrow question here is whether the discrimination against the plaintiff is an undue or unreasonable one. Upon such a question it would seem that regard should be had to its effect upon the business of the complaining party, assuming, as we must here, that he is without fault and did not justly bring upon himself the discrimination complained of. If the direct and natural result is to hamper, seriously injure or destroy his business while the like business of others similarly situated is not affected, it would seem quite obvious that the discrimination was undue and unreasonable. If that would not be an unreasonable discrimination, I am at a loss to imagine one. It is averred in the complaint, and indeed it is a matter of common knowledge, that it has long been the custom among railroad companies to collect at destination the freight charges on consignments of produce to commission houses. The consignee deducts from the proceeds of sale the freight charge paid by him when he receives a consignment and also his commission, and then remits the balance to his consignor. This convenience or privilege of having the charges of the carrier paid at destination by the commission merchant is so important and valuable to those engaged in growing or buying and assembling such commodities for shipment to market centers that their selection of a consignee largely depends upon it. It is altogether clear that a discrimination like that complained of is well calculated quickly to ruin an established commission business. An embargo against one of a number of competitors may well be equivalent to a sentence of commercial death. The act forbids the subjection of the shipper to an undue prejudice or disadvantage in any respect whatever, and, if we do not regard the effect upon his business in its relation to the like business of his competitors, what conceivable test or standard is available?

There are many facilities, privileges, and conveniences connected with the transportation of traffic, to which class the one before us belongs, not founded on a common-law duty nor relating to the reasonableness and uniformity of rates of carriage, yet an undue discrimination in the granting or withholding of which may make or unmake the fortunes of shippers and localities. It needs but a moment's reflection to perceive that the doctrine of the foregoing opinion, logically applied, would uphold a persistent course of discrimination tending, for illustration, to drive the wholesale business of the city of St. Paul to its neighbor Minneapolis, or, on the other hand, to impair the well-

known importance of the latter as a wheat market. The question, being one of power under the law, is not affected by the improbability of its exercise. In such a case it could as well be said, as it is here, that at common law the railroad companies were not required to grant to any shipper or locality the facilities, privileges, and conveniences in question, and the discrimination between cities similarly circumstanced and aggressively competing was not unreasonable, though its natural effect would be greatly to injure the commerce of one for the benefit of the other.

The truth is, it seems to me, the purpose of the first clause of section 3 of the act of 1887 was, as its specific terms show, to declare unlawful discriminations of every character which result in undue or unreasonable prejudice or disadvantage. Whether the course of a railroad company is discriminatory involves a consideration of the similarity of conditions and circumstances surrounding those affected, and whether it is unduly or unreasonably so depends largely upon the result or effect of the discrimination, and, if directed against an individual shipper, whether justification may be found in his conduct. That is the rational construction of the law, and it is the one the Interstate Commerce Commission has consistently applied. Phelps & Co. v. Railway, 6 Interst. Com. R. 36; St. Louis Hay & Grain Co. v. Railroad, 11 Interst. Com. R. 90; Miner v. Railroad, 11 Interst. Com. R. 422; Walker v. Railroad, 12 Interst. Com. R. 196; Rogers & Co. v. Railroad, 12 Interst. Com. R. 308.

The first of these cases is quite like the one at bar. Phelps & Co., who were cotton commission merchants at New Orleans, complained that the railway company unjustly discriminated against them by refusing to deliver uncompressed or flat cotton consigned to them upon the same terms as it delivered such cotton of other consignees in that city. The general custom there was for cotton dealers or factors to have the uncompressed cotton consigned to them delivered direct to compress companies with whom they did business, and for the railroad companies to waive prepayment of their freight charges and their lien on the shipments, and to accept as security in lieu thereof the written guaranty of the compress companies previously executed. In the particular case the railway company, while continuing the custom as to others, refused to accept the guaranty of the compress company with which Phelps & Co. did business, though there was no question of its financial responsibility, and refused to deliver cotton consigned to Phelps & Co. without prepayment of the charges. The commission held the case to be one of undue discrimination, and ordered that as long as the railway company observed the custom in New Orleans it should desist from making Phelps & Co. an exception. In St. Louis Hay & Grain Co. v. Railroad, supra, it was held that stopping a commodity for treatment or reconsignment is in the nature of a special privilege which the carrier may concede but which the shipper cannot demand as of right, but in granting or denying it a uniform course must be pursued without unjust discrimination between markets or individuals. Of course the views of the commission in these cases are the views of an administrative body and are not binding on the courts,

but it seems to me they are persuasive, comport with good reason, and reflect the clear intent of Congress in the enactment of the law.

It is said the question is no longer open here because of the decision of this court in Little Rock & Memphis R. Co. v. St. Louis, etc., R. Co., 11 C. C. A. 417, 63 Fed. 775, 26 L. R. A. 192, affirming (C. C.) 59 Fed. 400; but it is clear that that case and those which follow it have no application whatever to the case at bar. It is true that the observations of Judge Thayer, in speaking for this court, when disconnected from the matter before him for decision, would seem to be pertinent now, but he was then considering a liberty of contract left untouched by the interstate commerce act of 1887, while here the right of the railroad company is the subject of express restrictions in the act. In other words, the Little Rock & Memphis Case in this court, and, without exception, every case in which it is cited and followed, involved controversies between railroad companies themselves, not complaints made by shippers or on behalf of localities or subjects of traffic; and it was held in those cases that the first clause of section 3 of the act, declaring it unlawful for a carrier engaged in interstate commerce "to subject any particular person, company, firm, corporation or locality, or any particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatever," was not intended to affect the right of the carriers to select their connecting agencies for transportation upon such terms as were mutually satisfactory to them. The distinction was pointed out in Oregon Short Line, etc., Co. v. Northern Pacific, 9 C. C. A. 409, 61 Fed. 158, in which it was held that the provision of the interstate commerce law forbidding discrimination against any locality or description of traffic was for the protection of the locality or traffic itself, and could not be invoked by a carrier against a connecting carrier which discriminated in the matter of requiring prepayment of freight and car mileage. Mr. Justice McKenna, then Circuit Judge, said, in delivering the opinion of the court in that case:

"But we do not think it is competent for a railroad company to appropriate the grievance of a traffic or locality under section 3, and complain of it."

The Little Rock & Memphis Case was also cited in Louisville, etc., R. Co. v. West Coast Co., 198 U. S. 483, 497, 25 Sup. Ct. 745, 49 L. Ed. 1135, as authority for the principle that a common carrier has a right to employ auxiliary or connecting agencies and to make contracts with them, and what it does with one it is not bound to do with another. But how obvious it is that such cases have no relevancy here.

I think the judgment of the trial court should be reversed.