UNITED STATES v. ERIE R. CO.

(District Court, W. D. New York. July 11, 1913.)

1. CARRIERS (§ 100*)—TARIFF SCHEDULES—DEMURRAGE—NOTICE OF ARRIVAL OF CARS.
    Under a tariff schedule of a railroad company requiring the payment of demurrage after 24 hours on the arrival of cars at their destination and notice to the consignee, where cars were to be delivered at the yards of the company for reconsignment, a notice of their arrival at such yards,

without more particular designation, is sufficient, and demurrage is assessable after 24 hours from the giving of the notice.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 427–433; Dec. Dig. § 100.*]

2. CARRIERS (§ 38*)—INTERSTATE COMMERCE ACT—INDICTMENT FOR VIOLATION—SUFFICIENCY.

An indictment charging a railroad company with violation of Interstate Commerce Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380 (U. S. Comp. St. 1901, p. 3156), as amended by Act June 29, 1906, c. 3591, § 2, 34 Stat. 586 (U. S. Comp. St. Supp. 1911, p. 1289), by failing to observe its tariff schedule as to demurrage, *held* sufficient where it charged that for a period of two years defendant delivered coal to a particular consignee without assessing demurrage accrued or keeping records of demurrage charges, while as to other shippers and consignees it made and collected such charges and kept such records.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 84–87; Dec. Dig. § 38.*]

3. CARRIERS (§ 32*)—INTERSTATE COMMERCE ACT—CONSTRUCTION.

The provision of Interstate Commerce Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380 (U. S. Comp. St. 1901, p. 3156), as amended by Act June 29, 1906, c. 3591, § 2, 34 Stat. 586 (U. S. Comp. St. Supp. 1911, p. 1289), prohibiting an interstate carrier from extending to any shipper or person any privileges or facilities "in the transportation of passengers or property" except such as are specified in its tariffs, relates solely to transportation privileges and facilities, and does not apply to such as may be extended to a consignee after the shipment has reached its destination.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 32.*]

Criminal prosecution by the United States against the Erie Railroad Company. On demurrer to indictment. Overruled except as to count 51.

John Lord O'Brian, of Buffalo, N. Y., U. S. Atty.

Moot, Sprague, Brownell & Marcy, of Buffalo, N. Y. (Adelbert Moot and George Brownell, both of Buffalo, N. Y., of counsel), for defendant.

HAZEL, District Judge. [1] The defendant, the Erie Railroad Company, organized and existing under and by virtue of the laws of New York, has been indicted for failure to observe its tariff in violation of the Interstate Commerce Act of February 24, 1887, as amended by the Act of June 29, 1906. The indictment contains 51 counts; the first 50 counts charging in effect that the defendant company at the times specified failed strictly to observe its demurrage tariff published and filed as required by law, and the fifty-first count charging the giving to the consignee of privileges and advantages not mentioned in its tariff and schedule. The defendant has demurred to the indictment, contending that the first 50 counts are insufficient in law, as it is not alleged therein that any demurrage ever accrued. The specific objection is that it is not averred that the coal cars were placed for delivery at a particular point on the tracks designated by the consignee, and that it is not stated whether the cars were to be unloaded by the defendant or by the consignee; and it is argued, inter alia, that a simple notification to the consignee of the arrival of the cars at the East Buffalo

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

freight yards of the defendant company does not entitle the latter to exact demurrage.

An inspection of the indictment, however, makes clear that the consignee contracted for the transportation of coal from Carbondale, Pa., and other points, to the East Buffalo freight yards of the defendant company for reconsignment, and was seasonably apprised of the arrival of the shipments at that place. It is then charged that the cars were detained beyond the full period allowed by the tariff, but that demurrage was not assessed or collected by defendant within 30 days thereafter. The tariff and schedule, establishing demurrage charges of $1 per day a car from the receipt of notice by the consignee until the cars are released, do not particularize the manner of delivery or the place of unloading, and, as the shipment of coal was for reconsignment, it was obviously unnecessary in this case to use more specific language as to such matters. Though it is a common practice for railroad companies to deliver freight at particular places on their lines, at piers, wharves, private sidings, or points connecting with lines of other carriers, yet, as the commodity in question was concededly to be reconsigned, the rule of personal delivery, emphasized by various citations in defendant's brief, has no application. Hutchinson on Carriers, §§ 341–370. I think it is the law that a consignee is bound by the destination given at the beginning of the journey, and that he may be subject to demurrage charges after receipt of notice of arrival at that point. Rorer on Railroads, vol. 2, p. 1232. It has several times been held by the Interstate Commerce Commission, whose ruling this court is bound to follow unless such ruling is inconsistent with law (New Haven R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 26 Sup. Ct. 272, 50 L. Ed. 515), that demurrage is ordinarily assessable against a car load shipment only at a point of origin or destination or at the place of reconsignment. Munroe & Sons v. M. C. R. R., 17 Interst. Com. Com'n R. 27; Germain v. N. O. & N. R. Co., 17 Interst. Com. Com'n R. 22; United States v. Denver, etc., R. Co., 18 Interst. Com. Com'n R. 7. Delivery therefore at the defendant's freight yards at East Buffalo where the coal was to be reconsigned, in the absence of any other or different arrangement with the shipper or consignee, was a fulfillment of the carrying contract, and the defendant was not bound to wait for directions as to any other disposition of the commodity before its right to demurrage accrued. The case of Hite et al. v. Central R. R. of New Jersey, 171 Fed. 370, 96 C. C. A. 326, is a precedent for this ruling.

[2] It is next contended that, instead of alleging failure by the defendant to strictly observe its tariff, the indictment charges merely failure to observe a custom as to demurrage exactions. But I am of a contrary opinion. It is substantially alleged that for a period of two years the defendant delivered coal to the consignee, Williams & Peters, at East Buffalo without assessing demurrage or keeping records of demurrage charges and without rendering bills of account or collecting any demurrage, while as to other shippers and consignees, some of whom are named in the indictment, daily records of demurrage were kept and monthly bills of account rendered which were forthwith col-

lected in money. Under the circumstances, the recital of the ordinary method or system of business inaugurated by the defendant for charging and collecting demurrage on transportations of anthracite coal, though not in terms a part of the tariff, nevertheless has a clear bearing upon its strict observance and upon the intention of the defendant to violate the statute.

That railroad companies and common carriers generally, including defendant company, have a system of dealing with shippers and consignees by which carrying charges and charges for delays in acceptance or unloading are itemized and monthly statements forwarded and collected, has become so well recognized that judicial notice may be taken of such practice. There is nothing in the indictment relating to the custom or usage that raises a presumption of any intention or understanding to give an extension of credit to the consignee for the period specified in the indictment, or for any other period beyond 30 days after accrual of the demurrage. As I read the indictment, the words "charge for demurrage" do not imply extension of credit, but have reference to book entries in relation to the transportation. Omission to make any such entries in connection with the transportation in question is of the essence of the charge, and when considered in connection with the assessment of demurrage against other consignees, and its collection within 30 days thereafter, as was customary, strengthens the inference that the defendant in his relations with Williams & Peters intended to violate the statute.

Defendant's right to extend credit to the consignee for a period of two years without a definite arrangement in regard thereto, and its right to refuse credit to others, is perhaps a debatable question in view of the apparent conflict of judicial decisions. United States v. Hocking Valley R. Co. (D. C.) 194 Fed. 234, and contra, Gamble-Robinson Commission Co. v. Chicago & N. W. Ry. Co., 168 Fed. 161, 94 C. C. A. 217, 21 L. R. A. (N. S.) 982, 16 Ann. Cas. 613. But any such question need not be discussed or passed upon at this time and may be reserved for the trial, especially in view of the fact that any assumption that the defendant extended credit to Williams & Peters is palpably negatived by the statements of fact contained in the indictment.

[3] The fifty-first count of the indictment is demurred to on the ground that no crime in violation of section 6 of the act is set forth. This count, after including by reference the preceding counts, in substance charges that defendant gave to Williams & Peters a "privilege and advantage" which it refused to others, in extending to them the free use of trackage and free telephone service in notifying them of the arrival of cars and in reconsigning or forwarding such cars. By section 6 of the act under consideration, common carriers engaged in interstate commerce are forbidden to extend to any shipper or other person any privileges or facilities in the transportation of persons or property save such as are specified in the tariffs. I think the section contains a limitation requiring me to hold that the term "privileges and facilities" relates solely to the transportation of persons or property and bears upon the transportation rates and charges. The first 50 counts of the indictment, as already shown, are based upon the

failure to assess Williams & Peters for demurrage which accrued as a result of the detention of coal cars in the freight yards of the defendant. Such detention implies the use of trackage, and storage of cars, and it is difficult to conceive that the defendant may be held criminally liable for extending privileges and facilities of the kind enumerated, and at the same time held criminally liable for its failure to assess and collect demurrage; the transportation being identical. However, the privileges or advantages extended to the consignee, to which there is no reference in the tariff, are thought to come within the jurisdiction of the Interstate Commerce Commission, for, as said by the Supreme Court in the United States v. Pacific & Arctic Ry. & Nav. Co. et al., 228 U. S. 87, 33 Sup. Ct. 443, 57 L. Ed. 742, decided April 7, 1913, the act is "more regulatory and administrative than criminal." Although this case dealt with unlawful discrimination, still I think the following quotation from the opinion may be appropriately included herein:

"It (the Interstate Commerce Act) has, it is true, a criminal provision against violations of its requirements, but some of its requirements may well depend upon the exercise of the administrative power of the Commission. This view avoids the consequences depicted by the government. It keeps separate the civil and criminal remedies of the act, each to be exercised in its proper circumstances. It makes the Interstate Commerce Act what it was intended to be and defined to be in the cases cited by the District Court."

But as the offense of unlawful discrimination is expressly disclaimed by the district attorney, I will sustain the demurrer as to the fifty-first count on the ground that the so-called privileges and advantages extended to the consignee by the defendant were extended after the termination of the journey, or after the arrival of the freight at its destination for reconsignment, and therefore had no relation to the actual transportation of the property or to the rates and charges specified in the tariff published and filed.

My conclusion is that counts 1 to 50, inclusive, are valid in law, and as to them the demurrer is overruled; while as to count 51 the demurrer is sustained.